Court of Appeals. I'll hand it over to John. All right. That's right. Just counsel, let me just say to you, I used to argue cases on a field of the Ninth, and I always expected myself to know the record cold, and it was a pleasure to see how well you know the record. It was very well done. Thank you, John. Thank you, York. Thank you, John. Next case is Don Hall v. United States, 2011-51-19. Is it Mr. Regnier? Regnier, Your Honor. All right, thank you. Your Honors, counsel, Hall's jury service was within the letter and the spirit of Section 63-22, the court leave entitlement. The spirit? Yes, Your Honor. He volunteered. Well, it doesn't matter. The whole purpose was to get people to come forward and serve willingly, and that's exactly what happened here, and it's what happens every time a person fills out a grand jury questionnaire. This case should begin and end with the application of the plain meaning rule. The statute reads today the same straightforward way that it did, unambiguous text passed by Congress 72 years ago. Except for this case, the government has always understood what it meant and complied with its court leave mandate. Opinions of the Comptroller General, OPM's website, OPM's civilian personnel law manual all support court leave law, as the text reads. Significantly, the claims court did not find any ambiguity. Instead, it outright refused to apply the statute to Hall's second year of service. But the statute contains no distinction between a first and a second year of service. Both years require consent to serve, and those are provided by the prospective grand juror when they sign the questionnaire. They consent to serve at that time. Can I ask you a factual question? In California where she was serving, is grand jury service five days a week? Yes. Sometimes it can even run, well, in the case of the foreman, which was my client, weekends. Okay. But it was five days a week? It's not? Because in some jurisdictions I've discovered that it's only one or two, or here in D.C. it's three days a week. No, it's a full five. Which I was just wondering, because if she was only serving three days a week, then she That's not an issue in this case, Your Honor, and it's all documented it was a full five days. There is no evidence that when Congress passed the statute in 1940 that it intended the words to have any different import than their ordinary meaning. There's also no evidence that Congress intended to impose a one-year time limit on jury service, which is what the claims court has done. Presiding Judge Clark advised Mrs. Hall that federal employees had served two-year terms and been paid by the government the entire time. Nothing in the statute or the actual facts justifies the court of claims limitation on the power of Congress to provide court-leave benefits. What about its reliance on legislative history? But what it was relying on there, Your Honor, was with regard to witness-leave. It found nothing in the 19- They're in the same statute. Pardon me? They're in the same statute, juries and witnesses. It covers jurors, and it covers a separate category of witnesses. But witness-leave and the testimony in connection with that pertain to problems unique to witnesses had nothing to do with service as a juror. But counsel, that doesn't make sense because it's the preceding language, he is summoned, applies identically to both. That's correct. He is summoned as a juror or, in part two, as a witness, so there's no way that we could read he is summoned one way with regard to witnesses and a different way with regard to jurors. I'm not suggesting that you should, Your Honor. But then I think Judge Lurie's point is the Senate report, for example, suggests even if it is with regard to witnesses, it still nonetheless suggests that it is meant to cover only involuntary summonses, involuntary. What Congress was concerned with in 1970 when they were amending witness-leave was that witnesses might come to court and hang around and use that as an excuse to take time off and to avoid that kind of an abuse, they required that they be summoned. Well, up until then, only the government's witnesses. The Plans Court stated that members of the House expressed a concern over volunteering as a witness in order to get out of work for a few days. This was two years, volunteering to volunteer. But they were concerned, Your Honor, with witnesses that were not going to be utilized. And so they said the way we'll solve that is we'll require that they be summoned. But as Judge Moore has pointed out, that the summons covers both jurors and witnesses. It does cover both jurors and witnesses. And what about the court's reliance on the GAO interpretation that the word summons has a little wiggle room in it? They provide exceptions. That has been boiled down to the fact that summons means what it says. It's a call. It's an order by the court to control the juror or the witness. And interestingly enough, the summons plays such an important role in both instances that even if it's served as late as when the, for example, witness appears in court, that satisfies the requirements for entitlement. The court said the GAO found that the employees were not entitled to court leave even though they had been summoned as witnesses. The claims court may have said that, Your Honor, but the law is clear to me that once a witness or a juror has been summoned, court leave entitlement is triggered. And that's why they put the summons requirement in there, to make it compulsory, regardless of whether or not they had before that volunteered. I'd like to point out also that court leave entitlement, Your Honor, is a statute that requires due process. And Hall was denied due process in this case. It begins with an OPM claim under 31 U.S.C. 3702. In other words, OPM shall settle claims involving federal civilian employees' compensation and leave. Hall filed her claim with OPM in March of 05, while she was still serving on the grand jury. Three months later, the government terminated her. And in the meantime, OPM deliberately delayed another seven more months before they issued any kind of an opinion. And due process required, actually, that OPM be involved before there was a removal. The MSPB judge recognized this. And an OPM finding of entitlement, he said, might obviate the underlying basis for Hall's resultant removal. And this necessarily would eliminate the removal. Look at the post-removal claims. If we affirm the dismissal post-removal, can she refile with the MSRB? With MSPB? If this court does not grant ancillary relief, that may be the only recourse she has. Does she have that recourse? Well, our position in this, Your Honor, is that her recourse is with this forum and the claims court, in terms of granting her an entire remedy. I know, you said an entire remedy in your brief. And it's very clear in the Remand Act portion of the Tucker Act that that's authorized. And that should have been granted on our summary judgment motion in the lower court, along with court leave entitlement that precedes that. Once claims court jurisdiction was established, per this court's ruling on the first appeal, the Remand Act applies to cases already within the claims court's jurisdiction. Why? Because the Remand Act was enacted to put an end to endless litigation, to provide, as it says, an entire remedy. As a matter of plain meaning in the Remand Act, it authorizes the claims court, once primary jurisdiction was established by this court, to provide an entire remedy. And removal, our position is, is but a derivative of the prime objective here, court leave pay. Removal is the sequel. It's not the source of this litigation, because it emanates from court leave denial. However, our position, Your Honor, is that it should not be segmented and sent to MSPB. It should be decided by the claims court. What does the Remand Act mean? But what it says. And it's been nullified by the claims court's ruling, and our position is it's not precluded by CSRA. Jurisdiction is with the claims court in the clear language of the Remand Act, and it should be given the effect that it says. Making Hall whole for the claims court's egregious departure from the court leave guarantee. Now, let me refer briefly, with the utmost respect, to this court's comments on the first appeal, in connection with the possibility of going back to MSPB. That is not the law of the case. That doctrine requires the issue be raised and litigated, as you know, on the merits, with a full and fair opportunity to be heard and address that issue. And that did not happen in connection with the appearance in the claims court or on the first appeal. There were no findings of fact or conclusions of law in connection with that. This court's comments, we submit, regarding reinstatement and post-removal back pay were based on removal over which the claims court lacked jurisdiction were but obiter dicta. And they were unnecessary to the decision on the first appeal, decreeing jurisdiction based on the monetary mandate of 6322. Remand Act power to address an entire remedy was not discussed on that first appeal. Now, if you are into your rebuttal time, which you wish to save, you may continue or save it as you wish. I will save for final comments, Your Honor. Thank you. Thank you. Ms. Speck? The statute is pretty clear, isn't it? Summoned? Your Honor, we contend that Ms. Hall is urging an overbroad reading of the statute. Under her interpretation, which the trial court rejected, receipt of a summons is not always what it is to be summoned for purposes of the statute. Here, Ms. Hall should not be considered to be within the statute because she received the document entitled a summons only because she engineered the receipt of that summons. Specifically, she went to jury services, asked for an application, actually multiple times, and then applied for jury service. At which point, it was voluntary jury service, and in the words of the presiding court judge, she could have gotten out of that service at any time. So a lawyer contacts someone and says, I want you to testify. And they say, you're going to have to subpoena me, pal. That's the same thing as far as you're concerned? Your Honor, we contend that witness service is slightly different than jury service. However, as this court has noted, there are exceptions to what it means to be summoned in the jury context, I'm sorry, in the witness context. Specifically, a witness is unlikely to be summoned for more than a few hours or even more than a few days, whereas this jury service was for an extended period of time. And also, I don't understand how that could affect the definition of the word summoned. I don't understand how that responds to Judge Wallach's question. Well, Your Honor, looking at, as this court has previously brought up, looking at the GAO, the GAO has said that it doesn't always mean that you are summoned just because you receive a summons. For example, they looked at examples from juvenile detention court where a parent's child was called into juvenile court and the parent received a summons. However, they said that that wasn't, because the child was a party to the proceeding, the summons wasn't the equivalent of being summoned for the statute. Fair enough. So it looks to me like you conceded the point that Judge Lurie was asking about, that there is a distinction between witnesses and jurors. Here's my question. On page 18 of the appellee's brief, which bothered me a lot, I'll tell you, you say plainly Congress did not intend… For your vocation. Yep, for 5 U.S.C. 6322 to enable employees such as Ms. Hall to take a two-year vacation from work at taxpayer expense. So I suppose my question to you is, when the next time the courts print the information for federal grand jurors, should we include a little quote that says, if you don't want to do this, you can just argue to the court, quoting Ms. Speck, that this is a two-year vacation, so I shouldn't have to do it. Well, Your Honor, this case says that seeking out and engineering a summons for… I'm not familiar with the process for how this court seeks grand jurors. This case says that… Oh, I'm saying there is information printed for grand jurors handed to them when they may be a grand juror. Are you willing to say it's just a two-year vacation? Is that the government's position when you're asking people to do that? Again, I'm not precisely sure I understand the court's question. Is grand jury duty a vacation? Jury duty, if it is… Is grand jury duty a vacation, yes or no? It depends on the circumstances. Really? Because I think it's a heroic effort of citizenship. You think it's a vacation? Your Honor, the facts of this case demonstrate that Ms. Hall very clearly did not want to go to work. She led her employers to believe that she was going to come work in Washington, D.C. She did not tell them until the first day that she showed up for jury duty that she was going to be serving a year on the grand jury. At that point, the government made it clear they were displeased with her for seeking this service and volunteering for it without telling them. And then, even though she knew the government did not want them to continue service, she volunteered again and didn't tell the government about it until June 28th of the next year. This is an employee who clearly was seeking to avoid work. I'm not sure what the precise circumstances are for being selected as a grand jury. She may have avoided work via root canal. That doesn't make it vacation. However, Your Honor, we would contend that if she had appropriate sick leave, that would be one thing. We don't believe that the entitlement to court leave is triggered when an employee engineers the receipt of a summons. I'm really flabbergasted that you haven't sort of just recanted and said it was a poor choice of words, Your Honor, in response to two judges who are obviously quite disturbed by the notion that the U.S. government has just analogized grand jury service to vacation. I'm really flabbergasted. I apologize for any offense I've caused the court. Didn't you probably mean that under these circumstances it was equivalent to it? Yes. But not in general. Your Honor, our point was, and as I've shown with the facts, that this employee was looking for an excuse to get out of work. She was looking for an excuse not to move to Washington, D.C., and therefore she sought out and engineered the receipt of a summons so that she would not come to work. The statute here invites OPM to write regulations which might have interpreted summons, but they haven't done that, have they? I don't believe so, Your Honor. And if you lose this case, if we reverse, then isn't it too late for OPM to regulate in a manner that you would find comfortable after we've interpreted the statute? I'm not sure I understand the question. There are no regulations that we have cited that we're aware of. Before a binding court interpretation of summons, the OPM could have said summons means a compulsory summons. If we reverse the Court of Federal Claims and hold that summons means summons, it's not qualified, it's too late for regulations, isn't it? To be applied to this case, I'm not familiar with the court. Well, I wouldn't be limited to this case. If we interpret the statute, summons means summons, whether it's voluntary or coercive. I'm assuming Your Honor is correct. I'm not precisely sure of the answer. However, Your Honor, we would also contend that Ms. Hall's interpretation of a summons, the trial court argued that Ms. Hall was urging an overbroad reading of the word summons, one that would allow for potentially limitless jury service. But the state of California has a two-year limit, does it not? Is there any state in the United States that has limitless one? No, but potentially Ms. Hall could have kept, I don't know whether there's any state, but if the service was a five-year limit or a ten-year limit, or Ms. Hall could have kept volunteering. But you're speculating the state of California has a two-year limit, does it not? Yes, Your Honor. Regardless, the service for someone who engineers a summons is clearly not what was Congress intended. In 1940, when the statute was initially passed, Congress indicated that it wanted, it sought for the court-leased statute to alleviate financial hardship associated with compulsory jury service. And that's simply not what we're looking at here. We're looking at an employee who had suffered no hardship because she was participating in an entirely voluntary system. Wait a minute now. Now I'm going to draw an analogy. If a soldier volunteers for duty in Afghanistan, they're volunteering, but they're also suffering a hardship. Now there are separate laws that protect them, but your definition here is disturbing. Well, Your Honor, I certainly don't mean to. As you mentioned, there are separate laws governing military service. Actually, I believe they require when they're serving an extended period of time, such as what we're talking about here, require actually resigning from their job so that someone else could actually fill that position. They are entitled to it when they come back. Here, it was actually the employer that suffered a hardship because they did not have anyone to actually fill that position and could not fill it in the meantime because Ms. Hall was still occupying that billet. When a deputy USA is called to duty to serve as a JAG or elsewise, does the United States Department of Justice require them to resign their job? I'm not sure, Your Honor. My understanding under the Uniformed Service Employment and Reemployment Act is that they are not considered filling that position and that someone is permitted to be hired under the law to fill that position in the meantime while they're gone. The service member is still entitled to fill that position to their job when they come back or an equivalent job. That wasn't my question. Does the government require them to resign? I'm not precisely familiar with what the statute is for the Uniformed Service Employment and Reemployment Act. I've given the court my brief knowledge of it. Regardless, Ms. Hall contends, even if the court disagrees, which we contend they should not with the trial court's ruling, the fact is that the Merit Systems Protection Board is the only entity that could have heard Ms. Hall's removal claim. Previously, we filed a motion to dismiss at the trial court level. We filed a motion to dismiss both Ms. Hall's pre-removal and post-removal claims, and the court granted our motion to dismiss. It came up on appeal here, and this court held that it agreed with the trial court that it lacked jurisdiction over Ms. Hall's claims for post-removal back pay and reinstatement. The court went on to elaborate upon examples for how this could have been resolved if Ms. Hall had gone to the MSTB without a ruling from the Court of Claims and indicated that pursuant to 5 U.S.C. 7512, only the Merit Systems Protection Board possessed jurisdiction to decide a removal claim pursuant to the United States v. Fausto. We believe that is either the law of the case or what was very clearly stated when this matter was previously before this court upon appeal. The same question I asked your opposing counsel. If we affirm the trial court as to the post-removal, is there still jurisdiction before the Merit Systems Protection Board? I believe Ms. Hall has not fallen within the time limits for jurisdiction. I believe that Merit Systems Protection Board has a certain time limit within which Ms. Hall can file an appeal. Initially, she filed an appeal regarding the removal in September of 2005. This is at A-304 through A-308 of the record. She indicated that she asked that it be dismissed pending the OPM's decision of her back pay claim. The MSB told her that she could refile if OPM denied the claim. OPM denied Ms. Hall's claim in January of 2006. Ms. Hall never sought to refile or never asked the Merit Systems Protection Board whether that could be reopened. This court very clearly in the previous decision said that that case could have been litigated even without a decision of the back pay claim. For example, the Merit Systems Protection Board could have said that even if she was or was not entitled to back pay, they thought her interpretation of the court leave statute to be compelling and have reinstated her regardless. Ms. Hall, we believe, has abandoned her claim with MSTB and has lost the right to reinstate that claim. Certainly, the court has never held, since the decision in the United States versus Fausto and the passage of the Civil Service Reform Act, this court has never held that the court of federal claims is entitled to reinstate a civilian employee. The one example that Ms. Hall cited was, I believe, the war decision was an unpublished military pay case, which cited exclusively two military pay decisions, which are not covered by the Civil Service Reform Act. Does the court have any additional questions? Apparently not. Thank you, Ms. Beckley. Thank you, Ms. Beckley. I request that the court affirm the trial court's ruling. Mr. Regnier has a little rebuttal time. Thank you, Your Honor. She filed twice with MSPB, and it's in our statement of facts. Once while she was on the grand jury, and then 13 days after she was removed. She never abandoned that matter before the MSPB. She got this opinion letter and was told in the opinion letter, your remedy now is to go to the appropriate United States court. Our position is, Your Honor, that there is no jurisdiction in MSPB because this thing derives from court leave, entitlement. And MSPB has previously declined jurisdiction over that very issue. The comment about grand jury duty being an excuse to get away from work, take a vacation, is clearly no vacation. It's in the statement of facts, undisputed. Presiding Judge Bruce Clark prevailed upon Mrs. Hall about two thirds of the way through her first year of service to serve a second year. She had intended to serve only one year, intending eventually to go to Washington, but she was still caring for her very, very ill mother. So it took two or three approaches, and then Judge Clark convinced her, you're the only person qualified to serve as foreman of this grand jury, and we need you to continue the vital work you're doing. And so she was persuaded and agreed and signed a second questionnaire consenting to serve. And it turned out to be very, very challenging work, which she fulfilled faithfully as a patriotic citizen and out of a sense of duty and commitment to the court. And yet you mentioned her very ill mother. I'm sorry, Your Honor? And yet you mentioned her very ill mother, which is what the government implies is her alternative reason. There is incidentally in the record, Your Honor, not a scintillative evidence that she was ever trying to get out of work for the government. This is the woman who, when the Department of Justice prevailed upon her to help them with a case that had been in limbo for years on a targets contract situation off the Pacific coast, agreed to help them pro bono, depositions, discovery, all sorts of work and computer technology input. And as a result, the government got a $15 million return on that, and she got personal commendations from the Department of Justice for her heroic service. She has rendered in its uncontested 20 years of exemplary service with the Naval Investigative Services and the Logistics Department. The absurdity doctrine does not apply here because what the claims court suggested was an absolute impossibility, infinite jury service. And no state, incidentally, has more than two years of service. And South Carolina is in the forefront on that because their service grand jury is two years from the get-go. Thank you, Mr. Renier. The time has expired, and we'll take the case under advisement. Thank you, Your Honor.